UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREAT LAKES INSURANCE SE,

        Plaintiff,

v.                                 Case No:  2:24-cv-00451-JLB-KCD

MING & KWANG DEVELOPMENT
CORPORATION,

        Defendant.

_____/

## ORDER

Great Lakes Insurance SE ("Plaintiff" or "GLISE") sues Defendant Ming & Kwang Development Corporation ("Defendant" or "Ming") for Declaratory Relief to determine the proper scope and parameters of an insurance appraisal. (Doc. 1). Defendant moved to dismiss Plaintiff's Complaint. (Doc. 13). Plaintiff responded. (Doc. 17). After careful review of the Complaint, the parties' briefings, and the entire record, the Court finds that Plaintiff has alleged sufficient facts to plead a claim for Declaratory Relief. Accordingly, Defendant's motion to dismiss is **DENIED**.

## BACKGROUND

This is a Hurricane Ian dispute. Following the storm, Defendant sent Plaintiff a Notice of Loss alleging wind damage to its property. (Doc. 1 at ¶ 17). Plaintiff hired Adair Horne & Associates "to adjust and administer the loss," which then assigned an independent adjuster to the claim. (Doc. 1-4 at 1). The independent adjuster estimated the damages to be $101,108.36 replacement cost

value ("RCV") [1], totaling $34,362.46 after the deductible.  (Doc. 1 at ¶ 23).  Plaintiff issued a coverage letter and check for that amount to Defendant.  (*Id.* at ¶ 24).  The next month, Defendant's public adjuster, Stellar Public Adjusting, submitted an estimate of $715,690.52 RCV and demanded a supplemental payment of $681,328.06.  (*Id.* at ¶ 25).  In turn, the independent adjuster reinspected and discovered additional wind damage estimated at $300,928.37 RCV.  (*Id.* at ¶ 26–27).  After considering the deductible, depreciation, and prior payment, Plaintiff issued a check to Defendant for $170,139.20.  (*Id.* at ¶ 28).

Later, at the independent adjuster's recommendation, "a professional engineer . . . inspected the [p]roperty to determine the cause and origin of damage to the metal siding."  (*Id.* at ¶ 30–31).  The engineer found that the damage was not a result of Hurricane Ian.  (*Id.* at ¶ 31).  Accordingly, Adair Horne & Associates advised Defendant that "no additional covered wind damage was found."  (*Id.*).[2] The next day, the Defendant's adjuster demanded "appraisal of the entire loss for all coverages under the policy."  (Doc. 1-3).  Plaintiff agreed, and the parties' appraisers agreed to appoint an umpire for the appraisal.  (Doc. 1–7).

Plaintiff's appraiser sent Defendant's appraiser an "Appraisal Form," requesting that RCV and actual cash value ("ACV")[3] be delineated, as well as "those

---

[1] The replacement cost value is the replacement cost of Plaintiff's property without deductions for depreciation.  *See CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 191 (11th Cir. 2021) (defining "replacement cost value").
[2] Not including Plaintiff hiring Adair Horne & Associates, the above facts are alleged by Plaintiff in its Complaint without any citation or evidentiary corroboration.  However, Defendant does not dispute the facts as alleged.
[3] The actual cash value represents the replacement cost minus the deduction for

damages that were the result of direct physical damages from the covered peril, those damages that are incurred solely on account of matching and continuity, and those indirect damages that are only incurred in connection with making a repair of directly damaged property." (Doc. 1-6 at 2).  Defendant's appraiser disagreed, arguing that the insurance contract did not require separate delineations for ACV and RCV.  (Doc. 1-11 at 2–4).

On May 13, 2024, Plaintiff filed its Complaint seeking Declaratory Relief. (Doc. 1).  Plaintiff requested that this Court "declare that Plaintiff is within its rights to request that the appraisal panel delineate between replacement cost value and actual cash value damages within the appraisal award form so that Plaintiff may appropriately pay the award in accordance with the subject insurance policy and Florida law."  (*Id.* at 15).  Plaintiff also "seeks a declaration that costs attributed to matching as set forth in Section 626.9744, Fla. Stat., shall not be appraised or awarded given that the policy at issue is a commercial property policy and not a homeowner's policy."  (*Id.* at ¶ 1-2).  Defendant filed a motion to dismiss. (Doc. 13).  Plaintiff responded.  (Doc. 17).

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v.*

---

depreciation. *See id.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555, (2007)).  "At the motion to dismiss stage, all well-pleaded facts are

accepted as true, and the reasonable inferences therefrom are construed in the light

most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274

n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370

(11th Cir. 1998)).  Thus, the complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I.    Declaratory Relief.

Plaintiff filed its Complaint for Declaratory Relief under the federal

Declaratory Judgment Act, 28 U.S.C. § 2201.[4]  (Doc. 1 at ¶ 1).  "Under the . . . Act,

federal courts have the authority to declare the rights and other legal relations of

---

[4] While Plaintiff filed this action under the federal Declaratory Judgment Act, this
Court's jurisdiction is based on diversity jurisdiction, 28 U.S.C. § 1332.  "The
[federal] Declaratory Judgment Act is procedural in nature and is not an
independent basis for federal jurisdiction."  *Townhouses of Highland Beach Condo.
Ass'n, Inc. v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1309 (S.D. Fla. 2007) (citing
*Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Aetna Life Ins. Co. of Hartford, Conn.
v. Haworth*, 300 U.S. 227, 240 (1937)); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339
U.S. 667, 671 (1950) (explaining that the federal Declaratory Judgment Act
"enlarged the range of remedies available in federal courts but did not extend their
jurisdiction").  Though "federal law determines whether a federal court can and may
properly render a declaratory judgment . . . [s]tate law determines the substantive
rights and duties of the parties of an insurance contract."  *Townhouses of Highland
Beach Condo. Ass'n, Inc.*, 504 F. Supp. 2d at 1310 (citations omitted).  Thus,
proceeding under diversity jurisdiction, the Court has jurisdiction because the
parties have complete diversity of citizenship and the amount in controversy
exceeds $75,000.

any interested party in a case of actual controversy, regardless of whether further relief is or could be sought." *Cameron v. Scottsdale Ins. Co.*, No. 1:16-CV-21704, 2016 WL 7387388, at *2 (S.D. Fla. Dec. 21, 2016) (citing 28 U.S.C. § 2201). The test for whether an actual controversy exists "is whether the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (citation omitted).

Here, the parties offer differing interpretations of certain policy language. *See Cameron*, 2016 WL 7387388, at *2 (finding that the plaintiff's federal Declaratory Judgment Act claim was appropriate where the parties contradictory policy interpretations resulted in the defendant refusing to pay, hindering plaintiff's financial ability to repair damage); *cf. Gonzalez Quevedo v. Lexington Ins. Co.*, No. 4:20-CV-10028-JLK, 2021 WL 950859, at *2 (S.D. Fla. Mar. 12, 2021) (holding that because "[p]laintiffs did not question the construction or validity of any specific portion of the [p]olicy . . . [p]laintiffs [did] not allege sufficient facts to establish the existence of an actual controversy regarding the construction or validity of the [p]olicy and, therefore, . . . failed to plead a viable cause of action for declaratory relief"). Plaintiff contends that the policy necessitates delineation of the appraisal by RCV and ACV (Doc. 1 at ¶ 56), while Defendant argues that this interpretation "interject[s] terms and conditions on the appraisal provision not found in the policy." (Doc. 13 at 2). Moreover, Plaintiff maintains that without the delineation,

"it will be required to proceed to appraisal under uncertain terms, which will likely result in an appraisal award that includes damages that would have otherwise not been owed or would not be owed until repairs have been made." (Doc. 1 at ¶ 60).

Notably, Defendant does not object to the Complaint for Declaratory Relief on the grounds that Plaintiff has not sufficiently pleaded facts for the elements of a declaratory relief claim. (*See generally* Doc. 13). Instead, Defendant objects on the grounds that Plaintiff's "request should be denied . . . as it is inconsistent with the policy and case law on the issue." (Doc. 13 at 2). Given these circumstances, the parties have adverse legal interests, and the immediate controversy is substantial. Thus, an actual controversy exists. *See Maryland Cas. Co.*, 312 U.S. at 273.

## II.    Plaintiff sufficiently pleaded a claim for Declaratory Judgment.

Defendant first argues that the policy's plain language does not require delineation of RCV and ACV in the appraisal and that such a requirement would essentially "re-write the policy." (Doc. 13 at 3–10). Indeed, the policy's Appraisal Provision does not require the appraisal to be delineated by RCV and ACV:

> 2. Appraisal
>
> If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(Doc. 1-2 at 16).  Defendant finds support for the dismissal of this issue on the basis that interpreting a delineation requirement from the policy is "improper."  (Doc. 13 at 4) (citing *Vista View Apartments, Ltd. v. Chubb Custom Ins. Co.*, No. 08-22772-CIV, 2009 WL 10669062, at *2 (S.D. Fla. July 7, 2009) (denying an insurance company's motion to require the appraisal be itemized by losses covered and not because "nothing in the plain language of the [p]olicy provides for the itemization of the loss on a line-item basis as requested by the [r]espondent."); *White Surf Condo. Mgmt. Ass'n, Inc. v. Lexington Ins. Co.*, No. 617CV1203ORL40TBS, 2017 WL 10084143, at *1 (M.D. Fla. Aug. 10, 2017) (denying the defendant's motion to require an itemized appraisal "rather than a lump sum blanket award" because "[t]he policy does not tell the appraisers how to conduct the appraisal or the form the award should take.")).

Plaintiff concedes that the policy does not explicitly require RCV and ACV delineation.  Instead, Plaintiff asserts that—when read as a whole—the policy requires this delineation for accurate appraisal because the policy's Coverage provision covers only "direct physical loss of or damage to Covered Property."  (Doc. 1-2 at 7).  It does not cover matching costs or "indirect damages . . . only incurred in connection with making a repair of directly damaged property."  (Doc. 1 at ¶ 15–40).  Plaintiff relies on *Breakwater Commons Ass'n, Inc. v. Empire Indem. Ins. Co.*, No.

2:20-CV-31-JLB-NPM, 2021 WL 1214888, at *4 (M.D. Fla. Mar. 31, 2021) for support. There, the Court required that the appraisal award delineate between costs for each building under the policy because "'in construing insurance policies, courts should read each policy as a whole'" and "a lump-sum appraisal award presenting . . . a single RCV figure for the entire 28 building condominium complex would not be appropriate." *Id.* (quoting *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1252 (11th Cir. 2010)).

In *Calusa Bay N. Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-540-JLB-NPM, 2024 WL 3642342, at *1 (M.D. Fla. July 22, 2024), the Court dealt with a policy's appraisal provision almost identical to the one at hand. Specifically, both provisions generally require that appraisers will give the value of the property but do not discuss how that value should be itemized, if at all. *Calusa Bay N. Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-540-JLB-NPM, 2022 WL 6162704, at *1 (M.D. Fla. Sept. 30, 2022). There, the Court required delineation of RCV and ACV "[t]o the extent the award includes any figures for replacing undamaged items to match the replacement of damaged items." *Calusa Bay*, 2024 WL 3642342, at *2 (citing *Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1283-1285 (Fla. 3d DCA 2020) (explaining that ACV does not account for matching costs where the insurance policy required payment of ACV for a "direct loss")). In doing so, the Court reasoned that "the award must be made with full consideration of the provisions, exclusions, and other terms of the insurance policy." *Id.* at *2.

8

Thus, Plaintiff argues that delineating between RCV and ACV will allow it to accurately determine the appraisal award because ACV does not include matching costs. (Doc. 1 at ¶ 54) (citing *Vazquez*, 304 So. 3d at 1283–85; Fla. Stat. 626.9744 (requiring matching costs for homeowners' insurance policies but not mentioning commercial insurance policies); *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447-CIV, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011) ("[N]o Florida statute requires the insurer to provide coverage for 'matching,' except in the case of homeowner's policies.")).

Additionally, Plaintiff insists that delineation between RCV and ACV is necessary because ACV excludes indirect costs incurred during repair. (Doc. 1 at ¶ 54). In support, Plaintiff cites *Citizens Prop. Ins. Corp. v. Salazar*, 388 So. 3d 115, 118 (Fla. 3d DCA 2023). However, the court there did not hold that indirect costs are not included in ACV. *Id.* Rather, the policy it interpreted incorporated Section 627.7011(3)(a), Fla. Stat., providing that "the insurer must initially pay at least the actual cash value of the insured loss, less any applicable deductible. The insurer shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred." *Salazar*, 388 So. 3d at 118. Because "the homeowner did not produce any evidence to establish [that] her damages exceeded Citizens' initial payment" of the ACV for direct damages, the court held that "Citizens was not yet obligated to pay any additional amount or matching costs." *Id.*

While Defendant does object to the delineation generally in its Motion to

9

Dismiss, it does not take specific issue with delineation of RCV and ACV to distinguish between direct and indirect damages. In any event, the Court finds that Plaintiff has alleged sufficient facts to state a claim for declaratory relief in the form of requiring delineation of the appraisal award by RCV and ACV.[5]

## III. Challenging the Appraisal.

Defendant last argues that, because Plaintiff has paid the appraisal award, it cannot now challenge a portion of the appraisal award. (Doc. 13 at 10–12) (citing *Nationwide Mut. Fire Ins. Co. v. Francisco*, No. 208CV277FTM36SPC, 2010 WL 11508172, at *3–4 (M.D. Fla. Mar. 30, 2010) (holding that "an insurer can only dispute coverage for the loss as a whole and not as individual parts" after moving to confirm the appraisal) (quoting *Muckenfuss v. Hanover Ins. Co.*, No. 505-CV-261-OC-10GRJ, 2007 WL 1174098, at *2 (M.D. Fla. Apr. 18, 2007)); *Three Palms Pointe,*

---

[5] In its Response to Defendant's Motion to Dismiss, Plaintiff adds a new argument: that the policy's Appraisal Provision, when read in conjunction with the Loss Payment Provision, supports delineation between RCV and ACV. (Doc. 17 at 9–10). The Court will not consider this argument. *See Huls v. Llabona*, 437 F. App'x 830, 832 (11th Cir. 2011) ("Because [plaintiff] raised this argument for the first time in his response to [defendant's] motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed.R.Civ.P. 15(a), it was not properly raised below."); *Howard v. Harris*, No. 4:22CV97-AW-MAF, 2022 WL 22877473, at *1 (N.D. Fla. Aug. 24, 2022) ("[T]he Court will disregard new allegations raised in a response to a motion to dismiss because it is improper to attempt to amend a complaint in that manner.") (citing *Pankey v. Aetna Life Ins. Co.*, No. 616CV1011ORL37GJK, 2017 WL 9362906, at *2 (M.D. Fla. Feb. 24, 2017) ("[A] litigant cannot supplement his or her pleadings in a response to a motion to dismiss."))

*Inc. v. State Farm Fire & Cas. Co.*, 362 F.3d 1317, 1319 (11th Cir. 2004)

(interpreting Florida Supreme Court case *State Farm Fire & Casualty Co. v. Licea*,

685 So. 2d 1285 (Fla. 1996) to hold that "once an award has been made, the only

defenses that remain for the insurer to assert are lack of coverage for the entire

claim, or violation of one of the standard policy conditions (fraud, lack of notice,

failure to cooperate, etc.))".

Plaintiff responds that the argument is inapplicable because it "does not

intend to 'challenge' any line item within the award." (Doc. 17 at 15). To be sure,

neither of the cases Defendant relies on is on point with the circumstances of this

case. In *Francisco*, the Plaintiff moved to strike the appraisal award because it "did

not delineate between damages caused by water as opposed to mold or other perils."

*Francisco*, 2010 WL 11508172, at *2. In *Three Palms Pointe*, appraisers awarded

appellee an amount including relocation costs, but appellant refused to pay the

relocation cost portion of the award, alleging that the costs were not covered. *Three

Palms Pointe*, 362 F.3d at 1318. The Court held that the appellant could not

dispute a portion of the award after an award was made. *Id.* at 1319. Here,

Plaintiff is not moving to strike the award or a portion of the award, nor has it

refused to pay an appraisal amount. Further, the circumstances of this case are

distinguishable in that Plaintiff paid the award in accordance with past appraisals.

Still, Defendant is asking for an additional appraisal because it believes more

damage is covered under the policy than previously determined. (Doc. 1 at ¶ 33;

Doc. 1-3 at 1). So, unlike in cases cited by Defendant, Plaintiff is seeking direction

on whether the policy requires delineation for a future appraisal. *See e.g.*, *Calusa Bay N. Condo. Ass'n*, 2024 WL 3642342, at *1 (M.D. Fla. July 22, 2024) (granting a motion to lift the stay on appraisal and "governing the appraisal" by providing deadlines and requirements for the form of the appraisal after the defendant had issued checks for the claimed damage); *Westchester Surplus Lines Ins. Co. v. Jadestation Holdings, LLC*, No. 2:23-CV-927-SPC-NPM, 2024 WL 3642335, at *2 (M.D. Fla. July 19, 2024) (requiring the parties to have a specific form for their upcoming appraisal, including delineation).

Moreover, Plaintiff "requests delineation so that payment of the award can be made in accordance with the Policy and Florida law." (Doc. 17 at 15). This situation is more like *Triton Renovation, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-CV-432-JES-NPM, 2023 WL 4362509, at *3 (M.D. Fla. July 6, 2023) where the Court found that because the defendant insurance company "admitted coverage by its payment . . . on the claim" it could "not continue pursuing its defenses that damages were not caused by covered perils." Still, the Court allowed the defendant to "pursue its coverage defenses for any capped increase of cost of construction due to untimely repairs, replacement costs, disqualifying betterment, failure to fully comply with all of the terms of coverage" and allowed its "argument that the [p]olicy restricts [the plaintiff's] award to the cost of any completed repairs and ACV to any outstanding repairs." *Id.* (citing *Progressive Am. Ins. Co. v. Glassmetics, LLC*, 343 So. 3d 613, 626 (Fla. 2d DCA 2022) ("[T]he binding appraisal process remains enforceable while still allowing the parties to enforce such other rights as they may

12

have under the policy.")).

As set forth above, the Court finds the Plaintiff's argument persuasive and, thus, it will allow the Complaint to move forward.

## CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendant's Motion to Dismiss the Petition for Declaratory Relief (Doc. 13) is **DENIED**.

2. **No later than fourteen (14) days after this Order**, Defendant shall answer Plaintiff's Complaint.

   **ORDERED** in Fort Myers, Florida, on January 25, 2025.


_John L. Badalamenti_
**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE